UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DARRELL POER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:07-cv-1425-SEB-JMS |
| ) | |
| MICHAEL J. ASTRUE, Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment [Docket No. 41], filed on January 12, 2009, pursuant to Federal rule of Civil Procedure 56 and Local Rule 56.1. Plaintiff, Darrell Poer, brought his complaint against Defendant, Michael J. Astrue, Commissioner of the Social Security Administration ("SSA"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*. Mr. Poer claims that he was retaliated against in violation of Title VII when he was not selected for a GS-13 Senior Attorney-Advisor position in the SSA's Office of Disability Adjudication and Review ("ODAR") in Indianapolis, Indiana. For the reasons detailed in this entry, we GRANT Defendant's Motion for Summary Judgment.

**Factual Background**

**General Background**

In December 15, 1990, Plaintiff, Darrel Poer, began working for the SSA's ODAR as an Attorney Advisor in Indianapolis, Indiana. In 2003, Mr. Poer testified on behalf of two female African-American employees who had filed racial discrimination lawsuits against the Indianapolis office's Hearing Officer Director, Al Kearns, who was also Mr. Poer's second-level supervisor. Mr. Kearns was aware that he (Mr. Poer) had provided testimony in that litigation and Mr. Kearns was deposed for purposes of responding to Mr. Poer's testimony. Affidavit of Al Kearns ("Kearns Aff.") ¶ 6. Both Mr. Poer and Mr. Kearns remained employed at the SSA following the litigation.

In 2005, at the time the events culminating in the instant litigation transpired, Administrative Law Judge ("ALJ") Blanca de la Torre acted as the SSA's Hearing Office Chief Administrative Law Judge ("Hearing Office Chief ALJ") in Indianapolis.[1] In that position, Judge de la Torre was responsible for, *inter alia*, determining organizational structure, staffing needs, and composition of staff; reviewing work product; applying performance standards and appraisals; assigning office space, furniture, and equipment; maintaining time and attendance records and leave approval; and conducting labor management functions consistent with collective bargaining agreements, all pertaining to

---

[1] The Indianapolis ODAR staffs approximately seventy employees and, as such, is one of the larger offices within Region V. During the time period relevant to this litigation, the Indianapolis office had on staff four GS-13 Senior Attorney-Advisors.

the Indianapolis office. Declaration of Blanca de la Torre ("de la Torre Decl.") ¶ 4. Judge de la Torre reported to the Regional Chief Administrative Law Judge ("Regional Chief ALJ"), Paul C. Lillios, from the ODAR Region V Office[2] in Chicago, Illinois, and to David G. Hatfield, then Acting Chief Administrative Law Judge, at ODAR headquarters in Falls Church, Virginia.

Mr. Kearns, who served as the Hearing Office Director for the Indianapolis office from November 1993 through August 2008, was responsible for acting on behalf of the Hearing Office Chief ALJ in all matters relating to the management and operation of the Indianapolis ODAR, including planning, policy implementation, budget, personnel, and facilities. He also had the duty of tracking vacancy announcements and certificate packages and keeping Judge de la Torre apprised of the status of the application process. Id. ¶ 6.

**The Process of Posting and Filling a Vacancy**

Before an area ODAR office within the SSA's Region V can announce an open position, it must request authority to fill the position from the Region V office in Chicago, Illinois. Frank McGinley, ODAR's Region V Regional Management Officer, was responsible for reviewing and approving such requests and reviewing an area ODAR's proposed selection for any open positions designated level GS-13 or higher. Declaration

---

[2] The SSA's Region V is comprised of the territory in the following states: Indiana, Illinois, Wisconsin, Michigan, Ohio, and Minnesota. McGinley Decl. ¶ 3.

of Frank McGinley ("McGinley Decl.") ¶¶ 5-7.  If Mr. McGinley approved a request to announce a vacancy, the request would be sent to the Human Resources Specialist, who, at the time, was Addie Price.  Ms. Price would then prepare the vacancy announcement, collect the applications, and create a "well-qualified certificate," which listed the applicants that had been determined to have the best qualifications for the vacant position.  Ms. Price was also responsible for compiling the certificate package, which included the well-qualified certificate and the applications of the individuals who were listed on the certificate.  Once compiled, Ms. Price would forward the package to Mary Jo Awbrey, who was responsible for personnel actions in Mr. McGinley's office.  Upon receipt of the certificate package, Ms. Awbrey would report to Mr. McGinley that it had arrived and then send it to the area ODAR's Hearing Officer Director for processing.  Id. ¶ 8.

   The Regional Chief ALJ is the designated selection official for GS-13 attorney positions.  However, during the relevant time period, Regional Chief ALJ Lillios sought the area Hearing Office Chief ALJ's (here, de la Torre's) recommendation regarding selection of GS-13 attorneys, so the Hearing Office ALJ was unofficially referred to as a selecting official for these positions.  de la Torre Decl. ¶ 10.  The Hearing Office Chief ALJ was supposed to indicate his or her proposed selection on the well-qualified certificate, sign it, and then forward the certificate package to the ODAR Regional Office.  Mr. McGinley would then review the materials and discuss the selection with Regional Chief ALJ Lillios.  If the selection was approved, Regional Chief ALJ Lillios would sign the well-qualified certificate as the selecting official and then forward the certificate

package to Human Resources to make the proper notifications. McGinley Decl. ¶ 9.

According to Mr. McGinley, in the event that the number of well-qualified applicants for a position does not provide a sufficient field of candidates, the ODAR Region V office often cancels the open job announcement. Typically, at least three viable candidates are needed in order to ensure that the position can be filled with the best available candidate. When an announcement is cancelled for lack of a sufficient field of candidates, the position may be re-announced at a later time to allow additional candidates to apply. Any candidate who applied under the original announcement can also reapply under the second posting, if he or she chooses to do so. Id. ¶¶ 10-11.

**Plaintiff's Application Process**

In October 2005, at the direction of Hearing Office Chief ALJ de la Torres, Mr. Kearns requested and received authority from the Region V office to announce an open GS-13 Senior Attorney-Advisor position,[3] a higher-grade position than Mr. Poer's position at the time as Attorney Advisor. On November 14, 2005, the SSA posted the job opening under Vacancy Announcement AP-05-418, which was advertised throughout Region V. The announcement specifically provided that travel and relocation expenses would be authorized in accordance with applicable regulations. Mr. Poer applied for the

---

[3] The position opened in October 2005 when Daniel Mages was reassigned from his position as a GS-13 Senior Attorney-Advisor to a GS-13 Supervisory Attorney-Advisor position within the office. Although Mr. Mages continued to perform the duties of a Senior Attorney-Advisor as well as the duties required of his new position, Judge de la Torre decided to try to fill the vacant Senior Attorney-Advisor spot. de la Torre Decl. ¶ 8.

position and was included on the "Best-Qualified Certificate" ("the Certificate"), which is the list of those applicants that the SSA determined were well-qualified for the job. Only two other applicants, William J. Mackowiak (from Oak Brook, Illinois, within Region V) and Roy Rogers (from West Des Moines, Iowa, outside of Region V), were included on the Certificate.

On December 16, 2005, HR Specialist Price generated the Certificate, which was valid from that date through March 16, 2006, and sent it to Hearing Office Director Kearns. At some point after receiving and reviewing the certificate package, Mr. Kearns informed Judge de la Torre that there were three candidates on the certificate. According to Judge de la Torre, Mr. Kearns told her that two of the candidates were from outside of Region V. Affidavit of Blanca de la Torre ("de la Torre Aff.") ¶ 6. However, Mr. Kearns's report was inaccurate. Although two of the three candidates were in fact from outside the Indianapolis office, only one candidate, Mr. Rogers, was located outside Region V. The other non-Indianapolis applicant, Mr. Mackowiak, from Illinois, was within the SSA's Region V. After her initial discussion with Mr. Kearns, Judge de la Torre left for vacation and no further action was taken on the Certificate in her absence. Upon her return, at the beginning of January 2006, Judge de la Torre and Mr. Kearns had another conversation about the applicants during which they discussed their view that this was a very limited pool of candidates.

They also discussed the complications created by serious budgetary restrictions facing the entire SSA, including ODAR, at the time. In January 2006, a temporary hiring

freeze became effective, which prevented ODAR from making new hires or transferring in full time equivalents ("FTEs") from one region to another.[4] McGinley Decl. ¶ 19. According to Defendant, Mr. Kearns and Judge de la Torre concluded that, due to the exigent budgetary restrictions,[5] the agency lacked sufficient funding to pay for relocation expenses for candidates hired from outside Indianapolis. de la Torre Decl. ¶ 12. Selection of either Mr. Mackowiak or Mr. Rogers would have required the ODAR Region V office to request approval for relocation expenses from the ODAR Headquarters in Falls Church, Virginia, which were estimated to be $50,000.00 per candidate. Further, had Mr. Rogers been selected, a staffing FTE position would have had to have been transferred from the region in which he was then located to Region V, which also would have required approval from ODAR Headquarters. In his declaration, Mr. McGinley testified that, in light of the budgetary constraints at the time, such requests were

---

[4] Mr. Poer contends that this information should be disregarded as lacking in foundation and inadmissible hearsay. However, the foundation for Mr. McGinley's testimony on this matter is set out in his declaration, which provides that his testimony is based upon his personal knowledge as a 33-year SSA employee and Regional Management Officer for the Region V ODAR. McGinley Decl. ¶¶ 2-4. As Regional Management Officer, Mr. McGinley was responsible for various administrative matters, including budgetary and personnel matters, and thus was responsible for knowing and understanding ODAR's budgetary and hiring status. Id. ¶ 5.

Moreover, Mr. McGinley's testimony is presented not to prove the truth of the matter asserted, but to show the state of mind of Mr. McGinley, Judge de la Torre, and Mr. Kearns when the decision was made to cancel the job posting. It thus does not constitute inadmissible hearsay.

[5] As Hearing Office Director and Hearing Office Chief ALJ, both Mr. Kearns and Judge de la Torre were a part of monthly conference calls in which Mr. McGinley and Regional Chief ALJ Lillios addressed budgetary and hiring issues, including those faced by ODAR in late 2005 and early 2006. McGinley Decl. ¶ 20; de la Torre Decl. ¶ 5.

approved only for positions that were urgent and critical to the mission of the office where the position was located and the Senior Attorney-Advisor position did not meet those criteria. McGinley Decl. ¶¶ 21-22.

According to Judge de la Torre, because two of the three candidates on the Certificate were located outside Indianapolis and thus could not be considered for selection due to budgetary constraints, she determined that there was an insufficient number of candidates remaining from which to make a merit-based decision.[6] de la Torre Decl. ¶ 11. Therefore, no candidate from the Certificate was selected to fill the position. On March 16, 2006, the Certificate expired and, on April 7, 2006, after receiving a call inquiring about the status of the Certificate, Mr. Kearns signed the expired Certificate in the space reserved for the selecting official (here, Judge de la Torre)[7] and returned it to the Region V office, noting that no selection had been made. Mr. McGinley reviewed the Certificate and upheld the determination that a selection should not be made because, due to budgetary constraints, there was only one remaining candidate listed on the Certificate who could be considered for the position, namely Mr. Poer. Mr. McGinley subsequently informed Regional Chief ALJ Lillios that the announcement had been canceled for a lack of a sufficient field of candidates. McGinley Decl. ¶ 24.

---

[6] In her affidavit prepared in response to Mr. Poer's EEO grievance, Judge de la Torre testified that she and Mr. Kearns "mutually agreed" that they were not provided with a sufficient pool of candidates. de la Torre Aff. ¶ 11.

[7] Mr. Kearns testified by affidavit that because he and Judge de la Torre had failed to return the Certificate in a timely manner, he hurried to return it and as a result signed it in error as the selecting official. Kearns Aff. ¶ 2.

According to Mr. Poer, on April 11, 2006, he had a conversation with Mr. Kearns in which Mr. Kearns allegedly represented himself as the selecting official for the Senior Attorney-Advisor position.  Affidavit of Darrell Poer ("Poer Aff.") ¶ 4.  Mr. Poer contends that Mr. Kearns told him that the vacancy announcement was cancelled because, "I couldn't get FTEs . . . for the other two people and that left you on the list and I couldn't select you because that wouldn't be meritorious. . . . [T]here's nothing abnormal about that.  That's the way things are done."  Id.  When Mr. Poer responded that he thought that by qualifying to be included on the Certificate, he had established sufficient merit to be selected, Mr. Kearns allegedly became "slightly agitated" and reiterated his reasoning.  Id.

**Plaintiff's EEO Grievance**

On June 30, 2006, Mr. Poer filed an EEO grievance addressing his non-selection for promotion.  On October 2, 2006, testifying by affidavit in response to the EEO investigation, Mr. Kearns stated that Mr. Poer was not selected for the position because "the region was at the maximum number of positions so no outside hire could be allowed; meaning no one outside of the region or SSA" and that "you do not normally make a selection when you don't have at least a couple of people to select from."  Kearns Aff. ¶¶ 3, 5.  In his original affidavit, Mr. Kearns did not explain the reason that Mr. Mackowiak, the other Region V candidate, could not be considered one of the "couple of people to select from" nor did he make any mention of budgetary concerns.  Subsequently, on

9

October 11, 2006, Mr. Kearns submitted an addendum to his affidavit in which he testified that Mr. Mackowiak could not be considered because, although he was within Region V, his travel expenses could nevertheless not be paid because "[t]here was just no money in the budget for anything." Kearns Aff. Adden. ¶ 2. However, Mr. Kearns conceded that they "did not ask if the candidates would pay for their own travel."[8] Id.

Judge de la Torre also submitted an affidavit in response to Mr. Poer's grievance in which she testified that the lack of funds to pay for moving expenses for candidates outside of Region V left only one candidate – Mr. Poer – for consideration.[9] de la Torre Aff. ¶ 7. Because she felt that she "should be able to select a candidate based on merit and not by virtue of elimination," (id. ¶ 8), she and Mr. Kearns agreed that there was not a sufficient pool of applicants from which to fill the position. However, in her affidavit Judge de la Torre conceded: "There is no regulation precluding the selection from a certificate that provides only one candidate who can be selected. I could have selected [Mr. Poer], but did not want to make a selection based on elimination." Id. ¶ 10.

During the summer of 2006, while the EEO investigation was pending, Mr. Kearns informed Judge de la Torre that Mr. Mages (whose promotion had created the GS-13

---

[8] Mr. McGinley testified by declaration that it would be "extremely inappropriate" for management to ask an employee to pay for his or her own relocation expenses and that any such waiver of relocation expenses could not have been relied upon as having any effect. McGinley Decl. ¶ 21.

[9] As discussed above, in her affidavit, Judge de la Torre testified that Mr. Kearns had told her that both Mr. Rogers and Mr. Mackowiak were located outside of Region V. However, since Mr. Mackowiak was from Illinois, he was in fact located within Region V.

10

Senior Attorney-Advisor vacancy) was contemplating stepping down from his position as a Group Supervisor and had expressed interest in returning to the Senior Attorney-Advisor position. In late July or early August 2006, Mr. Mages personally spoke with Judge de la Torre and requested that he be reassigned to his former position. In September 2006, after Mr. Mages had served one year as a Group Supervisor, his request was granted and he was allowed to return to the Senior Attorney-Advisor position. Thus, the GS-13 Senior Attorney-Advisor vacancy announcement was never re-posted.

**The Instant Litigation**

On November 5, 2007, after filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") and receiving his right-to-sue letter, Mr. Poer filed his complaint in this court, alleging that he was not selected for promotion to the GS-13 Senior Attorney-Advisor position in retaliation for having previously engaged in statutorily protected activity, to wit, testifying against Mr. Kearns in a prior racial discrimination case.

## Legal Analysis

I.   **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

    The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

    Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises,

Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, it is mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

**II.     Retaliation**

Pursuant to the legal protections provided in Title VII, it is unlawful "for an employer to discriminate against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).  Mr. Poer contends that he was retaliated against in violation of title VII when he was not selected for an open GS-13 Senior Attorney-Advisor position approximately two years after he testified against his supervisor, Mr. Kearns, in a racial discrimination case.

A plaintiff has two methods of proof available to him to demonstrate retaliation. A plaintiff may prove retaliation either through the direct method of proof or the indirect method, also called the "burden-shifting" method. See Tomanovich v. City of Indianapolis and Indiana Dep't of Transp., 457 F.3d 656, 662 (7th Cir. 2006) (citing Moser v. Ind. Dep't of Corr., 406 F.3d 895, 903 (7th Cir. 2005)). Here, Mr. Poer has elected to proceed solely via the direct method of proof, so we address only that analysis. Under the direct approach, a plaintiff must present sufficient evidence to demonstrate that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the two. Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009).

To survive summary judgment under the direct method, Mr. Poer must present sufficient evidence, either direct or circumstantial, from which a jury could find a causal connection between his testimony against Mr. Kearns and the cancellation of the Senior Attorney-Advisor vacancy announcement. See Stephens v. Erickson, 569 F.3d 779, 787 (7th Cir. 2009). Direct evidence of retaliation is rare and typically requires an admission of discriminatory animus. However, a plaintiff can also demonstrate the necessary causal link by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." Ridings v. Riverside Medical Center, 537 F.3d 755, 771 (7th Cir. 2008) (quoting Phelan v. Cook County, 463 F.3d 773, 779 (7th Cir. 2006)). Examples of circumstantial evidence include, *inter alia*, "suspicious timing, ambiguous statements, behavior toward or comments directed at other employees

in the directed group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 792 (7th Cir. 2007) (citing Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)).

Here, Mr. Poer acknowledges that he has presented no direct evidence of retaliation and therefore relies on circumstantial evidence to meet his burden. Further, Mr. Poer concedes that there is no evidence that any of the named SSA decisionmakers – Hearing Office Chief ALJ de la Torre, Regional Chief ALJ Lillios, or Regional Management Officer McGinley – knew that he had previously engaged in any protected activity. Such a concession is usually fatal according to well-established Seventh Circuit law that provides: "In order to establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory." Nagle v. Village of Calumet Park, 554 F.3d 1106, 1122 (7th Cir. 2009). However, Mr. Poer contends that Mr. Kearns, although not one of the ultimate decisionmakers, had knowledge of his (Mr. Poer's) protected activity and unlawfully influenced the decision to cancel the job announcement which prevented his selection for the position of Senior Attorney-Advisor. When a supervisor with an allegedly retaliatory motive is involved in the employment decision, "that retaliatory motive, in some circumstances, may be imputed to the company, even if the manager with a retaliatory motive was not the ultimate decision-maker." Dorsey v. Morgan Stanley, 507 F.3d 624, 628 (7th Cir. 2007) (quoting Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1010 (7th Cir. 2000)).

In order to impute a non-decisionmaker's allegedly improper motive to the employer, a plaintiff must demonstrate that the non-decisionmaker significantly influenced the employer's decision, "either by withholding relevant information or providing false information." 507 F.3d at 628.  However, "where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker." Metzger v. Illinois State Police, 519 F.3d 677, 682 (7th Cir. 2008) (quoting Brewer v. Bd. of Trs. of Univ. of Ill., 479 F.3d 908, 918 (7th Cir. 2007)).

Mr. Poer contends that, even though Mr. Kearns was not a named decisionmaker, he was sufficiently involved in the decision to cancel the job posting so as to taint the process to Mr. Poer's detriment.  Many of the actions taken by Mr. Kearns cited by Mr. Poer in support of this contention were part of Mr. Kearns's ordinary duties, such as receiving the certification package, keeping Judge de la Torre apprised of the status of the applications, and returning the certification package to ODAR's Region V office. Admittedly, the evidence does show that Mr. Kearns supplied Judge de la Torre with inaccurate information regarding the candidates' then current employment locations, erroneously telling her that two of the three applicants worked outside of Region V. (Although two of the three applicants were located outside of Indiana, only one of the three applicants was located outside of Region V.)

Nonetheless, this misinformation was neither crucial nor determinative in the

decision to cancel the job vacancy posting. Judge de la Torre and Mr. McGinley testified that the cancellation decision was made based on budgetary constraints: in their judgment, ODAR would not have approved relocation expenses for two of the three candidates and, in addition, Judge de la Torre did not believe that a hiring decision should be made on the basis of there being only one candidate remaining by process of elimination of the other two. The undisputed facts establish both that out-of-region as well as out-of-state candidates would have required payment by ODAR of relocation expenses, which, at the time, were being approved only for positions that were deemed urgent and critical, which was not the case with the Senior Attorney-Advisor position. Therefore, although Mr. Kearns's statement regarding the number of candidates located outside of Region V was in error, it has not been shown to have affected the cancellation decision, since two of the three applicants would still have required payment of relocation expenses.

      The record also shows that, although Judge de la Torre consulted Mr. Kearns as to the decision to cancel the job posting, she was independently aware of the budgetary issues and in addition she possessed the requisite authority to cancel a certificate when an insufficient number of candidates were available for consideration based on her own responsibilities exercised in conjunction with Mr. McGinley's duties. When Judge de la Torre's decision and recommendations were subsequently independently reviewed and approved by Mr. McGinley, he reached his conclusions without input from Mr. Kearns.

17

We are unable to find on these facts that Mr. Kearns's alleged retaliatory motive[10] either caused or significantly influenced the decision to cancel the posting for the Senior Attorney-Advisor position, thereby preventing Mr. Poer to pursue an advancement to that post. There is simply no evidence of unlawful discrimination against him.

### III.  Conclusion

For the foregoing reasons, we **GRANT** Defendant's Motion for Summary Judgment. Final judgment will be entered accordingly.

IT IS SO ORDERED.

Date: __09/08/2009_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[10] We note that we have doubts regarding whether there is even sufficient proof that Mr. Kearns himself harbored a retaliatory motive against Mr. Poer. It is well-established under Seventh Circuit law that "to support an inference of retaliatory motive, the [adverse employment action] must have occurred 'fairly soon after the employee's protected expression.'" Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1009-10 (7th Cir. 2000) (quoting Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 511 (7th Cir. 1998)). Here, the time between Mr. Poer's testimony and the cancellation of the Senior Attorney-Advisor position was approximately three years. Cf. e.g., Saywood v. Lucent, 323 F.3d 524, 532 (7th Cir. 2003) (one year interval insufficient to support inference of causation); Paluck, 221 F.3d at 1010 (approximately one year interval insufficient to support inference of retaliatory motive). Although the Senior Attorney-Advisor position was the first promotion Mr. Poer sought after his testimony against Mr. Kearns, and, thus, according to Mr. Poer, the first opportunity Mr. Kearns had to retaliate against him in any "meaningful way," Mr. Poer concedes that neither Mr. Kearns nor any other individual at the SSA retaliated against him in any manner from the time he testified in 2003 to the time that the job posting was cancelled in April of 2006. Poer Dep. at 16-17.

Copies to:

John H. Haskin
HASKIN LAUTER  & LARUE
jhaskin@hlllaw.com

Jay  Meisenhelder
HASKIN LAUTER  & LARUE
jmeisenhelder@hlllaw.com

Debra G. Richards
UNITED STATES ATTORNEY'S OFFICE
debra.richards@usdoj.gov